TEXAS & P. RY. CO. v. WAGLEY et al.

(Circuit Court of Appeals, Fifth Circuit. February 7, 1899.)

No. 721.

1. RAILROADS—ACTION FOR INJURY TO PERSON ON TRACK—QUESTION FOR JURY.
     A defense to an action for the death of a person killed by a railroad train in the night, near a station, that such person was a trespasser, to whom the defendant owed no duty, where there was evidence that the place where he was struck was a public crossing, and known to be such by defendant, raises a question of fact, to be submitted to the jury.

2. SAME—QUESTIONS OF NEGLIGENCE.
     Plaintiff's intestate went to a station on defendant's railroad at night for the purpose of taking a train, and, while attempting to cross the tracks to a closet on the opposite side from the station, was struck and killed by cars which were being pushed along the track by an engine. The night was dark, the place was not lighted, and there was no light on the front end of the moving cars, nor any person stationed thereon. The cars made but little noise, and whether the bell on the engine was being rung was in dispute. There was evidence that the place where deceased was struck was a public crossing, and known to be such by defendant. Whether or not deceased was at the time under the influence of liquor was also in dispute. Held, that the questions of defendant's negligence and of the contributory negligence of the deceased, involving the question of his intoxication, were all properly submitted to the jury.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This is a suit for damages brought against the Texas & Pacific Railway Company for the killing of Clarence Wagley on the 2d day of June, 1896, by being run over by one of the cars of the Texas & Pacific Railway Company, near the passenger waiting room at Marshall, Tex. He left surviving him his mother, Mrs. S. J. Bryant, and Mrs. Mattie Wagley, his wife, and two minor children. These parties filed suit in the district court of Harrison county, Tex., against the Texas & Pacific Railway Company, for the sum of $35,000. The defendant removed the cause to the United States circuit court for the Eastern district of Texas, at Jefferson, in which court the cause was tried.

The petition of the plaintiffs below alleged that Wagley went to the passenger depot of the railroad company at Marshall, Tex., on the night of June 2, 1896, for the purpose of taking the passenger train of the defendant below to Bonham, Tex., by way of Texarkana, Tex.; that Wagley, while awaiting the train, was run over and killed by a train of the railroad company. The petition set out the circumstances of the killing, and alleged that the same was the result of the negligence of the railroad company. The petition averred, among other matters, "that the said coaches that run over and killed said Wagley were coaches that were being backed over and along said track by an engine that was some one hundred and fifty feet or two hundred feet from the front end of the advancing coaches, and that there was no person, no light, nor was there anything, on the front end of said coaches to warn persons crossing said track of the approach of said coaches; that the bell on the engine that was pushing said coaches was not being sounded; that it was negligence on the part of said defendant to allow and cause said coaches to be propelled over said track at said point without having a signal of some

kind on front of same, to warn persons of the approach of same, or without having some person on front end of the coaches to warn persons of the approach of said coaches, or without having a light on the front end of said coaches, so that same could be seen, and persons thus warned of the approach of said coaches; that the said coaches were being moved along said track at such rate of speed and in such way as not to make any noise, and there was nothing—noise, signal, light, nor any person or thing—to warn plaintiff and others of the approach of said coaches." The petition further averred that the place where Wagley was run over and killed was a public crossing, constantly used by the people of Marshall in passing from one part of the city to another. The railroad company pleaded the general issue, and for special defenses said that Wagley, at the time he received the injuries of which he died, was intoxicated, that he was a trespasser on the defendant's track, and that he was guilty of contributory negligence in going on the track at the place he did, and in the nighttime.

On the trial there was evidence tending to show the following facts and circumstances: Wagley, having previously come to Marshall from Bonham, went to the depot at Marshall at about 1 o'clock in the night of June 2, 1896, to take the train of the railroad company to Bonham, by way of Texarkana. In front of the depot there are two parallel railroad tracks, running east and west, the depot being south of the tracks. These tracks are on the "dump," or ground which has been raised about eight feet above the level of the ground across said tracks, and north of them. This raised ground has been made level with the tracks, is covered over with gravel and cinders, and is used as a platform. It extends for some distance both east and west of the depot. Opposite to the waiting room in the depot, but across the tracks, is a closet provided by the railroad company. This closet is on the low ground north of the dump or raised portion of ground above mentioned. There are two paths provided by the railroad company, leading from the dump to the closet. At each of the points where these paths reach the dump there are steps. One of these paths runs north and south from the closet, and reaches the dump at a point just opposite the waiting room. The other path runs from the closet in a southwesterly direction, and reaches the dump at a point west of the depot. At some distance west of this last point the track of the Texas & Pacific Railway, leading to Texarkana, connects with one of the two parallel tracks above mentioned, and forms with it an angle of about 45 deg., the track to Texarkana running in a northeasterly direction. The trains to New Orleans go east on one of the tracks in front of the depot, and the trains for Dallas go west. Quoting from the bill of exceptions in the cause: "The night train coming from the west of Marshall has two coaches on it that are transferred at Marshall to the train going to New Orleans. and the remainder of the train from the west goes north, towards Texarkana. When the night train comes in from the west, it comes in on the south track,—the one nearest the waiting room. The switch engine then comes in behind this train, and takes off two coaches from the hind end of the train, and pulls them a little distance west, and then pushes them down on the north track and couples them onto the New Orleans train. The New Orleans train on these occasions heading towards the east, with the back end of the train about the point D on the map. [This refers to a map in the transcript.] On the night of the 2d of June, when the switch engine was pushing the cars down on this track to be hitched on the New Orleans train, the cars pushed onto Wagley, and killed him at the point B [on the map]. * * * After the cars are taken from the train that comes in from the west at night, which is known as train 'No. 4,' it then proceeds on its journey towards Texarkana; and in order to do so it backs up to the west far enough to get on the track that leads out towards Texarkana, as shown on the plot." There was evidence tending to show that, just prior to the arrival of the train, Wagley left the waiting room, walked west a short distance on the south side of the parallel tracks, asked a witness to direct him to the water-closet, was told the ways of reaching it, and left the witness, going in the direction pointed out to him, which was towards the path already mentioned as running from the closet in a southwesterly direction. There was evidence tending to show that Washington avenue is the principal thoroughfare which

leads from the main part of the city of Marshall to the railroad depot. That street reaches the parallel tracks from the south at a place which is about opposite the westerly steps leading to the closet. There was evidence tending to show that the point at which Washington avenue reaches the parallel tracks is used, and has been used for a number of years, as a crossing by the public, both night and day. About one-sixth of the city of Marshall is north of the parallel tracks, and people pass across them at the point just mentioned in going from one part of the city to the other. A short time after Wagley had left the witness who pointed out to him the direction of the closet, he (Wagley) was killed by a train of the railroad company on the track furthest from the waiting room, and at or near the place above mentioned which is used by the public as a crossing. Two cars of the train which had just arrived on the track nearest to the waiting room, having been detached from the west end of that train by a switch engine, and having been pulled west about 200 feet, and then turned into the track furthest from the waiting room, were being pushed east by the switch engine to attach them to the New Orleans train, which was on the track furthest from the waiting room, when the cars ran over and killed Wagley. There was no headlight on the east end of the coach which struck Wagley, and no employé of the railroad company at that end. The cars were going at the rate of four or five miles an hour, and making little noise. There was a conflict of testimony as to whether the bell of the switch engine was ringing. There was evidence tending to show that the night was dark. There was a conflict of testimony as to whether Wagley was under the influence of liquor just previous to his killing.

The jury found a verdict for the plaintiffs below for $9,000 and costs, and the Texas & Pacific Railway Company has sued out this writ of error. The specifications of error relate to the following matters: The defendant below excepted to certain parts of the trial judge's general charge, by which, substantially, he left it to the jury to decide whether the place at which Wagley was killed was a place used by the public as a crossing, to the knowledge of the defendant below, and, if so, whether the defendant below was negligent in not using precautions to prevent injuries to persons who might be on the tracks at the time Wagley was killed. The trial judge also charged the jury that if the crossing was a public crossing, to the knowledge of the railroad company, it owed Wagley the duty to use precaution to avoid danger to him at the crossing. The defendant below also excepted to the refusal of the trial judge to give special charges requested by the defendant below concerning the following matters: A charge that it appeared from the evidence that Wagley "was negligent in being on the track at the time and place he was when killed, and therefore plaintiffs cannot recover." A charge that the defendant below "did not owe Wagley the duty to keep a lookout for him at the time and place he was when he was killed; and Wagley had no right to go on the track when trains are switching around, and rely on those operating the trains to look out for him and protect him from injury." A charge that: "It appears that the defendant company had prepared a way to go from the passenger waiting room to the water-closet. Now, if Wagley was killed in going to or coming from said water-closet by some other way than the way prepared, and while he was at a place where he could not reasonably be expected to be, then the plaintiffs cannot recover." A charge that it was the duty of Wagley to look and listen for approaching cars before going on the track, and that, if his failure to do so caused him to be killed, the plaintiffs could not recover. A charge that there was no evidence that the persons operating the train saw Wagley on the track in time to stop the cars before striking him, and that, therefore, if Wagley was negligent in being on the track when he was killed, the plaintiffs could not recover. A charge that: "It appears that the deceased, Wagley, had gone to the depot at Marshall to take the train out of there. Therefore he had a right to be at the depot, and it was the duty of the company's employés, in switching cars, to look out for Wagley's safety at all places where he might reasonably be expected to go while waiting for the train; but if, when Wagley was killed, he was at a place where persons waiting for a train would not reasonably be expected to be found, then the defendant did not owe him the duty to look out for his safety."

T. J. Freeman and F. H. Prendergast, for plaintiff in error.

S. P. Jones, for defendants in error.

Before McCORMICK, Circuit Judge, and BOARMAN and PAR-LANGE, District Judges.

PARLANGE, District Judge (after stating the facts as above). It clearly appears from the answer of the defendant below, and from the brief of its counsel in this court, that the main, if not the only, defenses upon which the railway company depends, are that Wagley was a trespasser on the track at the time he was killed, that he was intoxicated, and that he was guilty of contributory negligence in going on the track at the place he did, and in the nighttime. In his general charge the trial judge very fully and fairly submitted to the jury the question whether Wagley was a trespasser. This involved the inquiry whether the place at which he was attempting to cross when killed was a public crossing, to the knowledge of the railroad company. Under the evidence, this matter, in our opinion, was properly submitted to the jury. The evidence was such that the jury could well find that for a number of years the place at which Wagley was killed was a public crossing, and that this fact was well known to the railroad company. The question of negligence on the part of the railroad company, as also the question of contributory negligence on the part of Wagley, involving the matter of his being intoxicated or not, were likewise matters which in this case properly belonged to the jury, and which they decided after full and correct instructions by the judge in his general charge.

The special charges requested by the railroad company were all properly refused. The first of them required the court to find that Wagley was negligent, and was tantamount to a charge directing a verdict in favor of the railroad company. It would have been clear error to have given this charge, under the evidence. The special charge that it was the duty of Wagley to look and listen for approaching cars before going on the track was fully covered by the general charge. The other special charges, in our opinion, had no merit.

Whether Wagley be considered as one of the public, who, if the crossing was a public one, had a right to pass there, or whether he be considered as a person awaiting transportation on the cars of the railroad company, and who was trying to go to or return from the closet which the railroad company had provided across the tracks, it is plain to us that in this case it was proper to submit to the jury, as the trial judge did, the question of the negligence of the railroad company in not using reasonable precautions to avoid danger to persons who might be on the track at the place where Wagley was killed. There was a conflict of evidence as to whether the bell of the switch engine was ringing, and this was a question for the jury. But, assuming that the bell was ringing, it was competent for the jury to say whether it was sufficient for the railroad company to have the bell ringing on the switch engine, which was pushing the cars in front of it, and which was at a considerable distance—stated by a witness to have been about 200 feet—from Wagley, if the jury also found that there was no headlight

on the end of the coaches which were being pushed forward and which killed Wagley; that there was no employé of the railroad company there; that this train, going at the rate of four or five miles an hour, made very little noise; that the night was dark; and that there was an absence of light. We find no error in the record, and the judgment of the lower court is therefore affirmed.